# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

ROBERTO VARGAS,

      Petitioner,

v.                                         No. 24-cv-77-SMD-GJF

RONALD MARTINEZ and
ATTORNEY GENERAL OF
THE STATE OF NEW MEXICO,

      Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on the pro se *Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus By A Person in State Custody* ("Petition"), filed by Roberto Vargas ("Vargas" or "Petitioner") on January 22, 2024 (Dkt. No. 1), and on Respondents' Answer, filed on September 16, 2024 (Dkt. No. 9).[2] Vargas challenges his state convictions for depraved-mind murder, aggravated battery, and contributing to the delinquency of a minor based on ineffective assistance of counsel. For the reasons that follow, the Court recommends that Vargas's Petition (**Dkt. No. 1**) be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    FACTUAL BACKGROUND

Pursuant to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), the Court presumes the factual findings of the New Mexico Supreme Court on direct appeal are correct. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue

---

[1] The undersigned files this Proposed Findings and Recommended Disposition pursuant to the presiding judge's Order of Reference, entered on January 26, 2024, (Dkt. No. 3).

[2] Petitioner failed to file a timely reply, so the Court will issue this recommendation without considering a reply. *See United States v. Martin*, No. 98-CR-178, 2020 WL 2848191, at *2 n.14 (E.D. Pa. June 2, 2020) (collecting cases explaining that a habeas petitioner has no due process right to file a reply brief).

made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007). The New Mexico Supreme Court summarized the facts underlying Vargas's convictions as follows:

> This incident began with Defendant driving his friend, Abraham Venegas, and Abraham's cousin, Carlos Venegas, to Abraham's house in Carlsbad, New Mexico at around midnight following a party on July 4, 2016. Abraham then went to sleep.
>
> In the early morning hours of July 5, 2016, Eric Flores, Janell Villareal, Jesus "Jesse" Navarro, and Tamika Stearns were gathered outside of the home of Janell and Jesse's grandmother at 306 Peachtree Street in Carlsbad. As they were talking, Defendant and Carlos pulled up in a white truck, and Defendant got out. Defendant told the group he had been drinking and offered them some beer. Defendant then became loud and told Jesse that he wanted to speak to Tamika about something she had allegedly said. Jesse would not let Defendant talk to Tamika and asked Defendant to keep his voice down because people were sleeping.
>
> Defendant refused, and Jesse either put his arm around Defendant to usher him to leave or punched Defendant in the face. Defendant then took a swing at Jesse but missed and fell over. Defendant mistook Jesse's attempt to help him up as an attack and a fight broke out between Defendant and Jesse.
>
> During the fight, Defendant ended up by the driver's side door on the truck. From inside the truck, Carlos hit Jesse with an aluminum bat before Eric reached in and took it away. Eric then yelled for Janell to get his gun. Jesse, Janell, and Tamika all testified at trial that none of them, including Eric, had a gun. At that point, Defendant got back into the truck and fled, saying "I'm going to kill you ... I'm going to kill all you motherfuckers."
>
> Abraham testified that he was woken up by Defendant and Carlos an hour or two after he fell asleep. Defendant and Carlos told Abraham that they had been jumped and that Carlos had been hit with a bat. Abraham testified that Defendant, who was angry and "really drunk," wanted to go back and fight. Abraham agreed to go because he was upset that Carlos had been hit. The three men then got into Abraham's truck, where Abraham kept his AK-47, and Abraham drove back towards Peachtree Street.
>
> Abraham testified that they stopped along the way so that he could relieve himself. At that point, Carlos got into the bed of the truck with the AK-47 and Defendant told him to "get ready." Abraham testified that, because he believed they were just going to fight, he thought that Carlos had the gun only as a precaution. Abraham explained that, as they drove off, he turned off the lights of the truck but did not offer an explanation as to why. After driving for another two or three minutes, they arrived at Peachtree Street. Abraham testified that as he was bringing

the truck to a stop at the house, he heard gunfire from the bed of the truck and saw Defendant shooting a shotgun from the passenger seat. Abraham claimed that he had not seen the shotgun in Defendant's hands until he started shooting. When the shooting started, Abraham sped away.

Tamika testified that the white truck came back roughly five minutes after Defendant had initially driven away. As the truck pulled up to 306 Peachtree, Eric and Janell were backing out of the driveway in Eric's van. Jesse and Tamika were outside of Jesse's car on the driveway. Jesse and Janell testified that they heard someone yell, "What's up now?" before the gunfire started. When the firing started, Jesse ducked down behind his vehicle and testified that he could see a driver, a passenger, and someone in the bed of the truck but could not identify who they were. Tamika got inside Jesse's car and testified that she could tell the gunshots were coming from the white truck but did not see who was shooting. Janell testified that she saw Abraham driving the truck, Carlos in the bed, and Defendant in the front passenger seat.

Eric was fatally shot in the lungs and heart with bullets from the AK-47. Janell was hit in the arm with pellets from the shotgun. The neighbor's house at 304 Peachtree was also damaged by gunfire.

When Abraham, Carlos, and Defendant got back to Abraham's home, Abraham told Carlos and Defendant to get their things and leave. Abraham testified that he did not get his AK-47 out of the truck and did not see what happened to it. In a later search of Abraham's home and truck, a rifle was found in his truck but the shotgun used in the shooting was not found.

Abraham took a plea deal and agreed to testify against Defendant.

Dkt. No. 9-1 at 213-16.

## II.    PROCEDURAL BACKGROUND

At trial, defense counsel's strategy was to attack the credibility of the only two witnesses who identified Vargas as one of the shooters -- Janell Villareal and Abraham Venegas. *See* 9/25/17 CD[3] 2:06:22-2:09:18, 4:23:51-4:27:24, 4:42:50-4:51:51, 9:51:30-9:54:45; 9/26/17 CD 1:46:44-1:51:29; 9/27/17 CD 4:02:22-4:07:24.

Janell identified Vargas as a passenger in the white truck with a rifle, Carlos had an AK in the back of the truck, and Abraham was the driver when the shooting began. *See* 9/25/17 CD

---

[3] "CD" refers to the two CDs containing the audio recording of the jury trial and lodged with the Court on September 16, 2024 (Dkt. No. 10).

4:23:51-4:27:24. The State introduced photographs, including of Janell's arm where the shotgun pellets hit her, which required medical attention. *See id.* at 4:27:24-4:27:56; 4:35:04-4:37:49, 4:42:10-4:42:50; Dkt. No. 9-1 at 216. Janell admitted on her direct examination that she had smoked methamphetamine in the early afternoon and consumed seven beers throughout the day. Dkt. No. 9-1 at 235; CD 9/25/17 4:00:45-4:04:41. On cross-examination, trial counsel elicited testimony from Janell that she had only met Vargas once prior, a year before the event when she was high. 9/25/17 CD 4:42:50-4:43:50. She also admitted to telling the police a slightly different story than her trial testimony because she was "buzzing" and not thinking straight. *Id.* 4:44:45-4:48:48. During cross-examination, Janell acknowledged to being not truthful to police because she was buzzing. *Id.* 4:50:51-4:51:51.

Abraham, on direct examination, said he did not see that Vargas held a shotgun until Vargas started shooting. *See* Dkt. No. 9-1 at 238; 9/26/17 CD 11:50:31-11:50:52, 11:52:30-11:52:52. He also stated that he owned an AK47 as well as several other firearms, and on the day of the incident, the AK47 was in his truck. *See* 9/26/17 CD 11:33:00-11:33:25, 11:39:00-11:39:14. Additionally, Abraham testified that he took a plea agreement regarding his involvement in the shooting, with a sentencing cap of nine years, though it was up to the judge's discretion. Dkt. No. 9-1 at 239; 9/26/17 CD 11:30:50-11:31:29. During cross-examination, defense counsel probed Abraham about his statement that he did not see the shotgun until Vargas started shooting it, given that Vargas was not wearing a big overcoat and was in the front seat with Abraham. *See* Dkt. No. 9-1 at 238; 9/26/17 CD 1:47:28-1:48:17. Defense counsel further questioned Abraham about an earlier inconsistent statement in which he mentioned another guy named Pat as being there. *See* 9/26/17 CD 1:49:00-1:50:23. Defense counsel confirmed on cross-examination that Abraham's plea agreement was a reduced charge to second-degree murder and included that he testify. *See id.* at 1:50:39-1:51:29.

Of additional relevance to the Petition, testimony at trial indicated that Vargas also had been drinking prior to the incident. *See, e.g.,* 9/25/17 CD 2:29:54-2:30:56; 2:43:24-:35, 4:07:22-4:09:03; 4:10:00; 9/26/17 CD 9:24:51-9:24:54, 9:26:20-9:26:54. When Vargas first arrived at the gathering, he exclaimed he had been drinking, said he was "twisted" and "drunk" and "fucked up" and appeared to be under the influence. *See* 9/25/17 CD 2:43:24-2:43:39, 4:07:22-4:09:02; 9/26/17 CD 9:26:20-9:26:54. Jesse testified that Vargas was "buzzed." 9/26/17 CD 9:26:20-9:26:31. According to trial testimony, after Jesse either grabbed Vargas or hit him in the face, Vargas swung at him, but Vargas missed and fell over. *See* 9/25/17 CD 2:34:00-2:34:04, 4:10:32-4:10:52; 9/26/17 CD 9:25:50-9:27:40. Abraham additionally testified that later that night, Carlos woke him up, and Vargas was mad, cussing, upset and appeared "drunk, really drunk." *See* 9/26/17 CD 11:43:40-11:46:24. Nevertheless, at trial defense counsel did not request a diminished capacity instruction due to intoxication or request a voluntary intoxication instruction. *See* Dkt. No. 9-1 at 228.

Abraham too had been drinking, testifying at trial that he had steadily drunk alcohol all day and smoked marijuana, and he was drunk and later passed out. *See* 9/25/17 CD 11:39:49-11:42:00. Abraham stated that he drove the truck, and Vargas directed him to the house on Peachtree and told him where to stop. *See* 9/26/17 CD 11:47:20-11:52:20, 1:47:20. At one point, they stopped, Vargas told Carlos to get into the back of the truck to get ready, and Carlos got into the back with Abraham's firearm. *Id.* 11:48:50-11:49:33. According to Abraham, shots were coming from the back of the truck, and Vargas was shooting a shotgun from the passenger seat. *Id.* 11:52:20-11:52:56.

In closing, trial counsel argued to the jury that this case was one about identity, and the State could not present a single reliable eyewitness to identify Vargas as a shooter. *See* 9/27/17 CD 4:02:22-4:07:24. He attacked the credibility of Abraham, focusing on Abraham's lack of credible

testimony that he did not see the shotgun on the drive to the house and suggested that Abraham's testimony should not be believed because he received a "sweetheart" plea deal. *See id.*

On September 27, 2017, a jury found Vargas guilty of first-degree murder (depraved mind) (Count 1), conspiracy to commit first degree murder (depraved mind) (Count 2), tampering with evidence (capital crime or first or second degree felony) (Count 3), aggravated battery (great bodily harm) (Count 4), shooting at a dwelling or occupied building (no great bodily harm) (Count 5), and contributing to the delinquency of a minor (Count 6). *See* Dkt. No. 9-1 at 56-61, 71-74. The state court entered Judgment on November 3, 2017, sentencing him to life imprisonment plus 39 years. *See* Dkt. No. 9-1 at 71-74.

Vargas filed a timely direct appeal to the New Mexico Supreme Court. *See id.* at 78, 91. The Appellate Division of the Office of the Public Defender represented Vargas in the appeal. *See id.* at 91, 94. Vargas raised the following issues: (1) the district court committed fundamental error by failing to instruct the jury on voluntary intoxication; (2) his convictions for depraved-mind murder and shooting at a dwelling subjected him to double jeopardy; (3) the State failed to present sufficient evidence to prove Vargas committed tampering with evidence or shooting at a dwelling; (4) conspiracy to commit depraved-mind murder is a nonexistent crime and must be vacated; (5) the district court erred in limiting defense counsel's cross-examination of Abraham Venegas and Janell Villareal, the only people who said Vargas fired a gun; and (6) the Judgment and Sentence should be corrected to reflect the correct basis for his convictions. *Id.* at 95-96.

The New Mexico Supreme Court entered its decision on March 2, 2020. Dkt. No. 9-1 at 211. It concluded that there was insufficient evidence to support Vargas's convictions for tampering with evidence and shooting at a dwelling and vacated those convictions. *See id.* at 212, 217-22, 244. It also vacated Vargas's conviction for conspiracy to commit depraved-mind murder because

it is a nonexistent crime. *Id.* at 212, 223-27, 244. The New Mexico Supreme Court further held that no fundamental error resulted from the district court's failure to *sua sponte* instruct the jury on the defense of diminished capacity and voluntary intoxication. *Id.* at 212, 227-32. It explained that, even assuming Vargas would have been entitled to the instruction, Vargas made no arguments regarding his intoxication and never claimed intoxication interfered with his ability to form the mens rea necessary for depraved-mind murder or the specific intent offenses. *Id.* at 230-31. Next, the New Mexico Supreme Court determined that the district court's limitations on defense counsel's cross-examination of Janell as to her intoxication and Abraham as to his plea agreement were not an abuse of discretion nor a violation of Defendant's Sixth Amendment right to confront the witnesses against him. *Id.* at 212-13, 232-43. Finally, it ruled that the clerical error in Vargas's judgment and sentence must be corrected to reflect the jury's verdict. *Id.* at 213, 243-44.

After remand, the district court entered a corrected judgment and sentence and resentenced Vargas to life imprisonment plus 13.5 years followed by a period of five years to life on parole. Dkt. No. 9-1 at 249-54. On June 22, 2020, Vargas filed a state petition for writ of habeas corpus. *Id.* at 255. Vargas argued he was denied effective assistance of counsel resulting from trial counsel's failure to (1) request a diminished capacity instruction, (2) file "pretrial motions," (3) "interview or investigate material witnesses prior to trial and sufficiently pursue or offer impeachment evidence and call an expert[s] witness," (4) to preserve issues for appeal, and (5) to object to a jury instruction that was "contrary to the statute." *Id.* at 256.

Petitioner, through his Assistant Public Defender, filed an Amended Petition regarding whether the Corrected Judgment erroneously included a one-year firearm enhancement to the first-degree murder conviction, *id.* at 338, 341, and whether the Corrected Judgment contained a clerical

error, *id.* at 341. The Amended Petition incorporated the facts, law, and exhibits referenced in the original pro se Petition. *Id.* at 342.

The state court held a hearing on the Amended Petition on January 25, 2022. Dkt. No. 9-1 at 368. The same judge who presided over the trial held the hearing. *See id.* at 369, 475. Afterwards, the court ordered an amended judgment and sentence to correct the undisputed clerical errors, but otherwise denied the Amended Petition, finding that trial counsel was not ineffective. *Id.* at 368-69. The court explained that trial counsel's investigation and preparation did not fall below the established standard of care and that his decisions were tactical and based on the defense presented to the jury. *Id.* at 368. The court further concluded that the decision not to hire an expert witness was not a result of failing to perform to a legal standard of effectiveness. *Id.* Additionally, the court found that Vargas did not show that there was a reasonable probability that the result of the trial would have been different. *Id.* Subsequently, the court entered an amended corrected judgment. *Id.* at 370.

Vargas filed a petition for writ of certiorari to the New Mexico Supreme Court on March 20, 2023, Dkt. No. 9-1 at 376, which summarily denied the petition on July 18, 2023. *See id.* at 471. He is currently serving his term of life imprisonment in the custody of the New Mexico Corrections Department. *See* Petition 1, Dkt. No. 1.

### III.    SECTION 2254 HABEAS PETITION

Vargas timely filed his 28 U.S.C. § 2254 petition on January 22, 2024. Petition, Dkt. No. 1. In this Court, Petitioner repeats his state habeas claims for ineffective assistance of counsel: (1) failing to request a diminished capacity instruction; (2) failing to file "any pre-trial motions" on his behalf; (3) failing to interview or investigate any material witnesses or expert witnesses or to offer impeachment evidence; (4) failing to object to a jury instruction that was contrary to the

statute; and (5) failing to raise issues other than insufficient evidence on appeal. *Id.* at 5-14. Respondents do not dispute that Vargas exhausted his state court remedies. Answer 7 n.4, Dkt. No. 9. Rather, they assert the Petition is subject to denial and dismissal with prejudice for failing to identify a state court merits decision that was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented. *Id.* at 1.

## IV.    LEGAL STANDARDS

### A.  The AEDPA

"AEDPA requires that [courts] apply a 'difficult to meet and highly deferential standard' in federal habeas proceedings under 28 U.S.C. § 2254; it is one that 'demands that state-court decisions be given the benefit of the doubt.'" *Simpson v. Carpenter*, 912 F.3d 542, 562 (10th Cir. 2018) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). When a petitioner's habeas application includes a claim that the state court adjudicated on the merits, a federal court must not grant relief on the claim unless the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (quoting 28 U.S.C. § 2254(d)(1)-(2)).

To determine those questions, a federal habeas court must look at the legal and factual reasons why the state courts rejected the state prisoner's federal claims and give deference to that decision. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). When the last state court to decide a prisoner's habeas claim explains its decision on the merits in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if

they are reasonable." *Id.* When as here, however, the last state court fails to accompany its decision with a reasoned opinion, a federal habeas court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id.*

A state court decision is contrary to clearly established Supreme Court precedent if it applies a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision yet arrives at a different result from the precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A state court is not required to cite applicable Supreme Court law, or even suggest awareness of it, so long as its reasoning and result do not contradict the Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8 (2002).

To determine whether a state court decision involves an "unreasonable application" of Supreme Court law, a federal habeas court looks at whether the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407–08. An "*unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (italics in original). Under this objective inquiry, a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly;" rather, "that application must also be unreasonable." *Id.* at 411.

Consequently, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). It is the petitioner's burden to demonstrate that the "state court's decision is 'so obviously wrong' that no reasonable judge could arrive at the same conclusion given the facts of the prisoner's case." *Frederick v.*

10

*Quick*, 79 F.4th 1090, 1103 (10th Cir. 2023) (quoting *Shinn v. Kayer*, __ U.S. __, 141 S. Ct. 517, 523 (2020)).

### B. Pro Se Pleadings

A pro se litigant's pleadings are construed liberally and subjected to a less stringent standard than pleadings drawn by attorneys. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Nonetheless, it is not proper for a court "to assume the role of advocate for the pro se litigant." *Id.*

### V.    ANALYSIS

The Sixth Amendment to the United States Constitution guarantees Petitioner the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 685–86 (1984). For federal habeas petitions brought under 28 U.S.C. § 2254(d), *Strickland* is clearly established federal law. *See Williams*, 529 U.S. at 390. To succeed under *Strickland*, Petitioner must show both that "counsel's representation fell below an objective standard of reasonableness" and "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687–88. A court may address the performance and prejudice prongs in any order, but a court does not need to reach both if the petitioner fails to make a sufficient showing of one. *Cooks v. Ward*, 165 F.3d 1283, 1292–93 (10th Cir. 1998).

To establish the first prong, a petitioner must overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 690). This requires the petitioner to establish that defense counsel's "representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690).

To satisfy the second prong, the petitioner "must show that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105. "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* (internal citations and quotations omitted). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Id.* When § 2254(d) applies, the question is not merely were defense counsel's actions reasonable, but rather, "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

## A.  Ground One: Failure to give a diminished capacity instruction

For his first argument, Vargas asserts he was entitled to a voluntary intoxication instruction based on the evidence at trial that he was intoxicated. The state habeas court found at the hearing that trial counsel put on a zealous defense and was not ineffective for failing to request a voluntary intoxication instruction. *See* 1/25/22 CD 1:53:02-1:54:43. Considering the trial testimony, the state habeas court found that trial counsel made a tactical decision not to put on a voluntary intoxication defense and instead to proceed with the other valid strategic defense available to counsel. *See id.* at 1:46:48-154:33. The court noted that there was evidence Vargas was capable of leaving the gathering, organizing a group, and then returning to the gathering, so it was not ineffective assistance for counsel to pursue the trial strategy he did. *See id.* at 1:48:46-1:54:33.

Voluntary intoxication is a defense to specific intent crimes when the defendant's intoxication was of such a degree as would negate the possibility of the necessary intent. *State v.*

*Garcia*, 2011-NMSC-003, ¶ 35, 149 N.M. 185. To merit a jury instruction on voluntary intoxication, there must be evidence supporting the conclusion that defendant was actually intoxicated and to a degree as would negate the ability to form the necessary intent. *See id. See also State v. Privett*, 1986-NMSC-025, ¶ 20, 104 N.M. 79 ("We have held that to authorize an instruction on intoxication the record must contain some evidence showing or tending to show that defendant consumed an intoxicant and the intoxicant affected his mental state at or near the time of the homicide.").

Evidence at trial showed that Vargas had consumed alcohol and was "really drunk." The Court, however, need not decide whether Vargas would have been entitled to the voluntary intoxication instruction. As the state habeas court noted, trial counsel chose to pursue an identity defense that the State could not prove that Vargas was one of the shooters. That decision was strategic based on the evidence at trial. For example, testimony at trial showed that Vargas fought with Jesse, got back to his vehicle, threatened to kill everyone, fled in the truck, convinced Abraham to return with them to fight, gave Abraham directions to the Peachtree address, and operated the shotgun. That evidence gave trial counsel a reasonable basis for deciding that a voluntary intoxication defense was a potentially conflicting and less efficacious one than an identification defense. That only two witnesses identified Vargas in the truck, one of whom had consumed seven beers and meth that day, and the other of whom was also drunk and was testifying pursuant to a plea deal, gave trial counsel an avenue to impeach the credibility of the only witnesses who could place Vargas in the truck. Consequently, a reasonable argument exists that defense counsel's decision not to seek a diminished capacity instruction did not fall below the objective standard of reasonableness. *Cf. Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998) (concluding that, where trial counsel's defense was that defendant was not present and did not

participate in the robbery, pursuing diminished capacity defense would have been inconsistent with defendant's complete denial of involvement in the robbery, so it was reasonable and not ineffective assistance for trial counsel to not present inconsistent defense theories or to not seek intoxication instruction).

Moreover, Vargas fails to establish the second *Strickland* prong that there was a reasonable probability that, but for counsel's decision not to seek the instruction, the result of the proceeding would have been different. As just discussed, there was considerable evidence at trial showing that Vargas's level of intoxication was not of such a degree as would negate the possibility of the necessary intent. The lack of the voluntary intoxication defense does not undermine confidence in the outcome of the trial. Accordingly, Vargas is not entitled to habeas relief on his first ground.

**B.      Ground Two: Failure to file pretrial motions**

For his second ground, Vargas argues that trial counsel failed to file "an omnibus motion, a motion in limine, or a motion to suppress evidence." Petition 7, Dkt. No. 1. Vargas asserts that photographs "especially the ones pertaining to Janell" were admitted at trial that were not in the discovery he received and too late for the defense to make use of. *See id.* The state habeas court did not set forth its reasoning for rejecting this argument, although in its written order, it generally found that trial counsel's preparation did not fall below the established standard of care. *See* Dkt. No. 9-1 at 368. Even on a summary dismissal, the petitioner may succeed only if he can show the state court had no reasonable basis for its decision. *Quintana v. Mulheron*, 788 F. App'x 604, 609 (10th Cir. 2019). On a summary dismissal of a habeas petitioner's argument, a court must determine what arguments or theories could have supported the state court's decision and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are

inconsistent with the holding in a prior" Supreme Court decision. *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

Having considered the full record, the Court considers Petitioner's claim that the failure to file pretrial motions constituted ineffective assistance of counsel and prejudiced his defense to be entirely speculative and conclusory. A reasonable argument exists supporting the denial of habeas relief on Petitioner's second ground. *Cf. id.* ("We have repeatedly held that conclusory allegations are insufficient to warrant habeas relief for ineffective assistance of counsel.").

### C. Ground Three: Failure to interview witnesses, to investigate, or to tender expert witnesses

As for his third ground for habeas relief, Vargas asserts that trial counsel did not interview or investigate any material or expert witnesses or offer impeachment evidence. Petition 8, Dkt. No. 1. According to Petitioner, his counsel "had no kind of arguments for any of the evidence" brought against him through witness testimony and photographs. *Id.* Vargas contends his counsel did not interview any witnesses or otherwise investigate witnesses or evidence. *Id.* More specifically, he asserts it was ineffective for his counsel to not pursue statements and testimony from Detective "Adrian Rivera whose statements could have refuted everything Abraham & Janell said at trial." *Id.* In his Petition, Vargas cites his attachments, which include his original petition, so the Court has considered those arguments to be incorporated into his federal Petition. (*See id.*; Original Petition, Dkt. No. 1-1.)

At the hearing, the state habeas court expressly rejected Vargas's assertion that trial counsel was ineffective in failing to interview, investigate, and impeach witnesses. *See* 1/25/22 CD 1:46:48-1:48:46. The state habeas court found the argument speculative. *See id.* 1:46:48-1:48:46, 1:53:45-1:54:00. The court noted it had been impressed with trial counsel's cross examination of

witnesses and with his understanding of the facts, that he did a good job, and that he fully had the witnesses' statements. *See id.*

Under *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. Petitioner asserts that trial counsel failed to interview or subpoena the lead detective in the case, Detective Adrian Rivera, who had possible exculpatory evidence. Original Petition 25, Dkt. No. 1-1. Vargas attached Detective Rivera's sworn criminal complaint. *Id.*, Ex. C at 65 of 86. He underlined a portion of the narrative about Abraham's statement to police wherein Abraham initially denied being involved and said he used to own an AK47, but it was taken by the Task Force about two years prior. *Id.* at 69 of 86. According to the criminal complaint, Abraham subsequently changed his statement and admitted to being involved and to being the driver, although he denied knowing from where Vargas and Carlos got the firearms. *Id.* Vargas also underlined Abraham's statement that "Carlos had the chopper (assault rifle) and Robert had the shotgun." *Id.* Vargas contends that Detective Rivera may have countered Abraham's statements about owning an AK-47 and when he saw Vargas in possession of a shotgun as being inconsistent with what Abraham testified to at trial. *See id.* Petitioner also attached and highlighted a portion of a March 10, 2017 interview wherein Detective Rivera said that the investigation confirmed that Abraham had purchased an AK-47, which was confiscated by the drug taskforce, but he purchased another AK-47 in January of the same year. *See* Dkt. No. 1-1 at 82-83 of 86.

Whether "to call a particular witness is within the sound discretion of trial counsel." *Ellis v. Raemisch*, 872 F.3d 1064, 1087 (10th Cir. 2017). A fair-minded jurist could conclude that defense counsel made the objectively reasonable choice to present equivalent evidence by other means. Defense counsel cross-examined Abraham at trial about the plausibility of his testimony that he

could not see the shotgun. It was not unreasonable for trial counsel to decline to asks questions of either Abraham or to call Detective Rivera about the discrepancy between Abraham's trial testimony, in which he claimed ownership of an AK47, and his prior statement saying he no longer had it. As to the latter inconsistency, he made that statement when he was disclaiming and minimizing his involvement in the crime, so the discrepancy had minimal utility for impeachment purposes. Counsel chose instead to impeach Abraham's credibility by asking questions about the plea agreement, which tended to show his bias and reason for trying to pin the crime on Vargas. A fair-minded jurist could conclude that trial counsel exercised reasonable professional judgment. Vargas has failed to plausibly allege that interviewing or calling Detective Rivera was likely to produce information that would materially assist his defense.

Next, Vargas faults defense counsel for not interviewing or investigating Janell, who testified at trial that she was hit in the arm with pellets from the shotgun and went to a hospital for treatment. *See* Petition 8, Dkt. No. 1 (referencing attachment); Original Petition, Dkt. No. 1-1 at 26, 29-30 of 86. Relying on Janell's statement as set forth in the narrative of the criminal complaint, Vargas asserts that Janell did not claim any injury from pellets near the time of the incident. *See id.* & Ex. C, Dkt. No. 1-1 at 65-66 of 86. He contends that the failure to interview her resulted in a lack of impeachment evidence and an inability to obtain medical records or scientific proof regarding her claims of injury or of her meth and alcohol use. *See id.* The State, however, submitted photographic evidence at trial of Janell's injuries. Janell admitted to consuming meth and alcohol the day of the charged crime, a fact helpful to the defense when trying to cast doubt on her observations and identification. Petitioner's argument that a medical expert may have countered the evidence that Janell sustained injuries from pellets is entirely speculative. Petitioner has failed to plausibly allege that the medical records or a medical expert was likely to produce information

that would materially assist his defense. Rather than focusing on whether Janell sustained injuries for which the State had photographic evidence, trial counsel instead attempted to discredit her during cross-examination. *See Harrington*, 562 U.S. at 107 ("An attorney can avoid activities that appear distractive from more important duties. Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.") (quotation marks and citation omitted).

Furthermore, Vargas asserts that defense counsel was ineffective for failing to consult with and present expert witness testimony to counter the testimony of Detective Kevin Massis of the New Mexico State Police, the State's expert witness in crime scene reconstruction and blood splatter. *See* Petition 8, Dkt. No. 1 (referencing attachment); Original Petition, Dkt. No. 1-1 at 27-29 of 86. Petitioner postulates: "A defense expert may have been able to counter this testimony by pointing out how buckshot from a shotgun fired from the front seat could have entered the van and hit Janell[,] the radio[,] and air conditioner in the interior dashboard, but not Eric, when Carlos Venegas was standing in the bed of the truck shooting an AK-47, which is said to have made the hole in the rear window. Original Petition, Dkt. No. 1-1 at 27-28. Or, he says, an expert may have attacked the state expert's depiction of the theory of the shooting or "have testified that the person shooting the shotgun was also in the bed of the truck." *Id.* at 28. Further, Vargas contends an expert may have testified that a shotgun can fire five to eight shots without reloading, as Abraham testified, but only four shell casings were found at the crime scene. *Id.* Vargas's arguments that an expert witness would have offered such testimony and should have been called are conclusory and entirely speculative. Counsel's strategic decision whether to hire an expert is entitled to a strong presumption of reasonableness. *Dunn v. Reeves*, 594 U.S. 731, 739 (2021).

That trial counsel was in possession of the witness statements indicates his decisions not to interview the witnesses, call Detective Rivera, or call other medical or scientific experts were strategic. *See Cullen*, 563 U.S. at 189; *Harrington*, 562 U.S. at 108 ("An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense."). It was reasonable for trial counsel to pursue a strategy that the State could not prove beyond a reasonable doubt that Vargas was in the truck. Trial counsel elicited testimony about a chaotic scene where the only eyewitness other than Abraham who placed Vargas in the truck had consumed alcohol and meth that day. As for Abraham, defense counsel cross-examined him about his incentive to lie because of his plea deal, a prior inconsistent statement about a man named Pat being in the truck, and his dubious assertion he did not see the shotgun until the shooting began. Petitioner fails to show that trial counsel's decisions were unsound, let alone that it was unreasonable for the state habeas court to so conclude. *Cf. Cummings v. Sirmons*, 506 F.3d 1211, 1233 (10th Cir. 2007) (concluding petitioner failed to establish his trial counsel acted deficiently in failing to investigate and present information from purported experts where he never identified precisely what the purported experts would have testified to). Vargas fails to overcome the presumption that his trial counsel exercised reasonable professional judgment when deciding which witnesses warranted further interviews, investigation, and/or consultation. Accordingly, he has not shown that every fair-minded judge would agree that trial counsel acted unreasonably.

Turning to the second *Strickland* prong, Vargas also fails to show the requisite prejudice given the highly speculative nature of his argument and the evidence against him. *Cf. Boyle v. McKune*, 544 F.3d 1132, 1138-39 (10th Cir. 2008) (concluding that, even assuming counsel was deficient in failing to call medical expert witness, petitioner had not shown prejudice because of highly speculative nature of what testimony expert witness would provide the defense and weight

of evidence against him). Vargas failed to show a reasonable probability that, but for trial counsel's failure to interview or investigate these witnesses or call expert witnesses, the result of the proceeding would have been different. *See Cullen*, 563 U.S. at 189. Because he has not shown that every fair-minded jurist would find *Strickland* prejudice, Vargas is not entitled to habeas relief on his third ground.

### D.  Ground Four: Failure to object to a jury instruction that was contrary to statute

Turning to the fourth ground, Vargas contends that trial counsel did not object to an improper jury instruction on the mens rea for depraved-mind murder, despite that the instruction "is not the definition." Petition 10, Dkt. No. 1. He argues counsel was ineffective for failing to object to the depraved-mind instruction as well as "failing to object to instructions on a non-existent crime and another without sufficient evidence." *Id.* The state habeas court did not explain its reasoning as to this ground in the hearing; nor did the New Mexico Supreme Court on appeal.

At trial, the state court gave the following instruction pertaining to depraved-mind murder:

A person acts with a depraved mind by intentionally engaging in outrageously reckless conduct with a depraved kind of wantonness or total indifference for the value of human life. Mere negligence or recklessness is not enough. In addition, the defendant must have a corrupt, perverted, or malicious state of mind, such as when a person acts with ill will, hatred, spite, or evil intent. Whether a person acted with a depraved mind may be inferred from all the facts and circumstances of the case.

Dkt. No. 9-1 at 26. This instruction given to the jury is verbatim the New Mexico Uniform Jury Instruction for depraved-mind murder. *See* UJI 14-203 NMRA. The New Mexico Supreme Court in *State v. Candelaria*, 2019-NMSC-004, ¶¶ 10-14, 434 P.3d 297, explained approvingly that this instruction was amended in 2009 to aid juries in distinguishing between first-degree depraved mind murder from second-degree murder. Vargas has not demonstrated that trial counsel's failure to object to this uniform jury instruction was error, let alone that it amounted to ineffective assistance of counsel. No reasonable jurists could debate that habeas relief should be denied on this argument.

With respect to his claim regarding the jury instructions given on a non-existent crime and the crime without sufficient evidence, Petitioner appears to be referring to the instructions given for Conspiracy to Commit First Degree Murder (Depraved Mind) (Count 2), Tampering with Evidence (Count 3), and Shooting at a Dwelling or Occupied Building (no great bodily harm) (Count 5). *See* Dkt. No. 9-1 at 57-58, 60. The New Mexico Supreme Court on direct appeal vacated Vargas's conviction for conspiracy to commit depraved-mind murder (Count 2) because it was a nonexistent crime. *Id.* at 212. It also vacated his convictions for tampering with evidence (Count 3) and shooting at a dwelling (Count 5) for insufficient evidence. *Id.* Because his convictions were vacated on Counts 2, 3, and 5, Petitioner cannot show that any deficient performance in failing to object to the jury instructions on those counts prejudiced his defense. For all these reasons, Petitioner is not entitled to habeas relief on his fourth ground.

### E.  Ground Five: Failure to preserve issues for appeal

In his fifth ground for relief, Vargas asserts that trial counsel only raised one issue on appeal – insufficient evidence to support any conviction. Petition 14, Dkt. No. 1. Petitioner failed to explain which issue(s) were not raised on appeal or how the failure to raise the issue(s) prejudiced his defense. This claim is entirely speculative and conclusory, and therefore does not entitle him to habeas relief. *See Quintana*, 788 F. App'x at 609 ("conclusory allegations are insufficient to warrant habeas relief for ineffective assistance of counsel"). Moreover, appellate counsel raised six grounds for relief on appeal, Dkt. No. 9-1 at 94-96, resulting in the New Mexico Supreme Court vacating three convictions and correcting the judgment and sentence, *id.* at 244. Reasonable jurists could not debate the correctness of denying habeas relief on Petitioner's fifth ground on both prongs of the *Strickland* analysis. *See Harrington*, 562 U.S. at 103 ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling

on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

**VI.    CONCLUSION**

For the foregoing reasons, the state habeas court's decision was not contrary to or an unreasonable application of *Strickland*. The Court thus **RECOMMENDS** that the presiding judge conclude that the *Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus By A Person in State Custody* (**Dkt. No. 1**) be **DENIED** and this case **DISMISSED WITH PREJUDICE**. The Court **FINALLY RECOMMENDS** that no certificate of appealability be granted.

**SO RECOMMENDED**.

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**